NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0492n.06

No. 18-6334

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 24, 2019
DEBORAH S. HUNT, Clerk

PAMELA HANNON,

    Plaintiff-Appellee,

v.

LOUISIANA-PACIFIC CORPORATION,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE:    COLE, Chief Judge; SILER and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Pamela Hannon appeals the district court's grant of summary judgment for Defendant Louisiana-Pacific Corporation. She claims on appeal that the district court erred because a genuine issue of material fact existed as to her claim that Defendant discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a) *et seq*. For the reasons set forth below, we **REVERSE** the district court's grant of Defendant's motion for summary judgment and **REMAND** the case for trial.

## BACKGROUND

### Factual Background

Plaintiff worked for Defendant in various roles from 1987 to 2015. (R. 31, Statement of Undisputed Material Facts, Page ID# 407.) From 1999 until the end of her employment with Defendant, Plaintiff worked in marketing, and Plaintiff's job title when her employment ended was "Manager, Trade Shows." (R. 31, Page ID# 407–08.) In February of 2015, Defendant

informed Plaintiff that her position would be terminated. (R. 31, Page ID# 408.) That termination is the subject of this appeal.

Plaintiff held the position of Manager, Trade Shows on Defendant's Sales Services Team from June of 2014 until her firing, although she had been involved in trade shows before June of 2014 as well. (R. 31, Page ID# 408; R. 35, Statement of Undisputed Facts 2, Page ID# 672.) As Manager, Trade Shows, "[Plaintiff's] job responsibilities included [managing] trade shows, [Defendant]'s annual sales meeting as well as other items." (R. 35, Page ID# 672.) In the two years before her termination, she participated in between 100 and 120 trade shows per year and spent over half her working time on trade shows. (R. 31, Page ID# 408.)

Plaintiff was part of Defendant's Sales Services Team, which was responsible for sales services, trade shows, and customer experience. (R. 31, Page ID# 417.) Christine Booker was also part of the Sales Services Team as Customer Experience Manager, as were sales administrators Tracy Rusin (in charge of the East region) and Whitney Williams (in charge of the West region), who "provided sales support to field sales and other sales administrative services" to their respective regions. (R. 31, Page ID# 418.) Around September of 2014, Juliet Depina became National Retail and Sales Services Manager, and in this position she managed the Sales Services Team and supervised employees including Plaintiff and Booker. (R. 31, Page ID# 412, 417.) At some point in the Fall of 2014, Depina began discussing plans to reorganize the Sales Services Team. (R. 35, Page ID# 676–77.)

In early February of 2015, Depina terminated the positions held by Plaintiff and Booker. (R. 31, Page ID# 422–23.) Depina told Plaintiff that this was part of a reorganization of the Sales Services Team, and that Hannon's duties would in the future be covered by sales administrators (also called sales coordinators) "so the work would be done by several people versus just Hannon."

(R. 31, Page ID# 422.) Depina claims that she was also concerned that "the specialized functions that the then members of the Sales Services Team were performing w[ere] not best supporting [Defendant]'s needs" and should instead be performed by "multi-task oriented generalist[]" sales administrators. (R. 31, Page ID# 418.) By April of 2015, the Sales Services Team had been reorganized: Rusin was promoted to a position called "Sales Services Supervisor" reporting to Depina and overseeing sales administrators Cassie Kolls Warren and Whitney Williams. (R. 31, Page ID# 425–27.) In June of 2015, Desirae Webb was hired as a third sales administrator. (R. 31, Page ID# 427.) These three sales administrators "were responsible for specific regions in the United States" with job responsibilities including "executive support, general sales services, promotional items, travel, customer excursions, trade shows, mill tours, [Builder Appreciation Program] rebates, and vendor management." (R. 31, Page ID# 427.)

In the years following Plaintiff's termination, Rusin covered a number of the trade shows Plaintiff formerly covered, and the sales administrators covered a smaller percentage of these trade shows. (R. 31, Page ID# 428–32.) Rusin's other job responsibilities as Sales Services Supervisor included "supervis[ing] and guid[ing]" members of the Sales Services Team in various sales-related functions. (R. 25-2, Sales Service Supervisor Job Description, Page ID# 216.) Rusin still serves as Sales Services Supervisor and the Sales Services Team still comprises three sales administrators who report to Rusin. (R. 31, Page ID# 435.)

Plaintiff was 58 years old at the time her employment with Defendant ended. (R. 31, Statement of Undisputed Facts, Page ID# 407.) Depina was 52 years old at that time (*Id.*, Page ID# 424); Rusin was 51 years old; Booker was 43 years old; Kolls Warren was 23 years old; Williams was 24 years old (R. 35, Statement of Undisputed Facts 2, Page ID# 680); and Webb was 25 years old (*Id.*, Page ID# 682).

Plaintiff claims that Depina made several comments about Plaintiff's age in the roughly five months between September of 2014 (when Depina became Plaintiff's supervisor) and February of 2015 (when Plaintiff's position was terminated). These statements are discussed below.

## Procedural History

Plaintiff filed a charge of discrimination on the basis of sex and age with the Equal Employment Opportunity Commission ("EEOC") on October 9, 2015 (R. 1, Complaint, Page ID# 1; R. 1-1, EEOC Charge, Page ID# 8), and the EEOC issued a Notice of Suit Rights to Plaintiff on or about March 31, 2017. (R. 1, Page ID# 1; R. 1-2, EEOC Notice, Page ID# 10.) Plaintiff filed suit against Defendant in the Middle District of Tennessee on June 6, 2017, alleging that Defendant 1) discriminated against Plaintiff due to her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and 2) discriminated against Plaintiff due to her age in violation of the ADEA, 29 U.S.C. § 623(a) *et seq.* (R. 1, Page ID# 1–6.)

After discovery, Defendant moved for summary judgment on all claims. (R. 25, Motion for Summary Judgment, Page ID# 77–80.) Plaintiff conceded that her gender discrimination lacked support but argued she had created a genuine issue of material fact as to her age discrimination claim. (R. 33, Response, Page ID# 459.) The district court granted Defendant's motion (R. 41, Order, Page ID# 744), and a judgment was entered in favor of Defendant. (R. 42, Judgment, Page ID# 745.) Plaintiff timely appealed. (R. 43, Notice of Appeal, Page ID# 746–47.)

## DISCUSSION

We review de novo a district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). To be entitled to summary judgment, "the movant [must]

show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a fact is "material" depends on whether its resolution might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a summary judgment motion, this Court must "consider the evidence in the light most favorable to the non-moving parties, drawing all justifiable inferences in their favor." *Payne v. Novartis Pharmaceuticals Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 251–52). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 255).

Viewed in the light most favorable to Plaintiff, the evidence in this case demonstrates that Plaintiff's supervisor made numerous offensive statements invoking Plaintiff's advanced age during a period of roughly five months. At the end of this short period, the supervisor terminated Plaintiff despite her job performance being effective and satisfactory. The result of this termination was that the individuals primarily responsible for trade shows would not be Plaintiff but would instead be employees who were substantially younger than Plaintiff. Although Defendant claims its reason for terminating Plaintiff was a business reorganization, the evidence is sufficient to permit a jury to reject this explanation as pretext and to find instead that animus toward Plaintiff due to her age motivated Defendant to terminate her. Defendant would contest some of this evidence and these conclusions; however, the existence of such factual disputes makes it evident that a jury—not a judge—should decide what actually happened between Plaintiff and Defendant and why she was terminated. The district court thus erred in dismissing her claim, and we reverse and remand to allow the jury to play its proper role in this case.

In age discrimination cases, our "guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes v. GenCorp*, 896 F.2d 1457, 1466 (6th Cir. 1990); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016) ("[T]he sole question that matters [in employment discrimination cases is] [w]hether a reasonable juror could conclude that [the plaintiff] would have kept his job if he [was not in the protected class], and everything else had remained the same."). We therefore begin with the evidence of Defendant's ageist animus. According to Plaintiff, Depina—the supervisor who oversaw Plaintiff and ultimately terminated her—made at least six comments to Plaintiff regarding her age in the short time she was Plaintiff's supervisor. Depina referred to Plaintiff as "grandma" on three different occasions, and each time the comment was made in front of the other members of Plaintiff's team. (R. 25-1, Plaintiff Depo., Page ID# 150–55; R. 35, Page ID# 674–75.) Plaintiff claims that Depina also addressed her as "little old lady." (R. 25-1, Plaintiff Depo. Page ID# 162.) More egregiously, Depina once made a comment to Plaintiff that Plaintiff interpreted to be a teasing reference to post-menopausal issues. (R. 31, Page ID# 416; R. 35, Page ID# 674.) These comments belittling and singling Plaintiff out for her age in front of her colleagues "made [her] feel very uncomfortable." (R. 25-1, Plaintiff Depo., Page ID# 151.) Plaintiff also testified that Depina once asked her about her retirement plans. (R. 25-1, Page ID# 124.) Depina disputes that these incidents occurred as Plaintiff describes them. (R. 35, Page ID# 674–75.) We emphasize that it is not our role to decide such factual disputes; rather, a jury should decide such disputes—provided that they concern material facts.

To determine how material statements like Depina's are in age discrimination cases, we consider "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process;

(3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002). These statements were indisputably made by a decisionmaker: Depina was Plaintiff's supervisor and did eventually terminate her. On their face, the statements may not have related to the decision-making process, but Depina's six comments, which unambiguously referred to Plaintiff's age and were made in a short span of time, constitute more than vague, isolated remarks. *See Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1249 n.2 (6th Cir. 1995), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). Finally, the statements were temporally close to the termination, as Depina was only Plaintiff's supervisor for about five months. *See Diebel*, 492 F. App'x at 528 ("[D]iscriminatory remarks made a few months before an adverse employment decision [are] temporally proximate[.]").

These statements are therefore relatively strong evidence of age discrimination. There is a question in this case as to whether this evidence constitutes direct evidence of discrimination or only circumstantial evidence. Such labels are often unhelpful and beside the point in cases like this, where our "guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes*, 896 F.2d at 1466. Nevertheless, Depina's statements arguably constitute direct evidence that her age was a factor in her termination. *See Talley*, 61 F.3d at 1249 (concluding racist comments not specifically related to the plaintiff "constitute[d] direct evidence" of discrimination). But even if these statements are insufficient as direct evidence to overcome summary judgment, they are sufficient circumstantial evidence—combined with other evidence discussed below—to permit Plaintiff to present her claim to a jury. *See Tuttle v. Metro. Gov't of*

*Nashville*, 474 F.3d 307, 320 (6th Cir. 2007) (concluding that statements including "I want to apologize for causing you stress. I wouldn't want anything to happen to my mother and dad" "may not rise to direct evidence of age discrimination, [but] could have provided circumstantial evidence to the jury of such discrimination.").

Plaintiff claims this is a typical comparator case that we should analyze under the framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Defendant argues that because this case involves a business reorganization, we must instead use a modified version of the *McDonnell Douglas* framework. The first three requirements of Plaintiff's prima facie case under the standard and modified frameworks are identical. *See Barnes*, 896 F.2d at 1464–65. Plaintiff certainly meets these three requirements, as she was 58 years old at the time of the adverse employment action and therefore within the protected class, she was undisputedly qualified for her position, and her employment with Defendant was terminated. *See id.* at 1465; 29 U.S.C. § 631(a).

The dispute over which framework to use affects only the fourth requirement of Plaintiff's prima facie case. In a typical age discrimination case analyzed under the *McDonnell Douglas* framework, a plaintiff must prove that she "was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). We have defined "replaced" narrowly—a "replacement" must more or less perform *all* of a plaintiff's former duties and *only* the plaintiff's former duties. *See Barnes*, 896 F.2d at 1465. This requirement changes, however, "when business considerations cause an employer to eliminate one or more positions within the company." *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009). This is because in those situations, a plaintiff will generally be unable to identify a replacement employee to serve as a comparator. In such cases, the plaintiff must instead "provide 'additional direct, circumstantial, or statistical evidence

tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Id.* (quoting *Barnes*, 896 F.2d at 1465).

Plaintiff's position was eliminated, so she must provide such additional evidence.[1] She has done so. An example of "additional direct, circumstantial, or statistical evidence" of age discrimination that this Court has given is evidence "that the employer made statements indicative of a discriminatory motive." *Barnes*, 896 F.2d at 1466. As discussed in detail above, Depina's statements about Plaintiff's age constitute evidence of ageist animus. Plaintiff thus meets her prima facie burden.

Because Defendant has pointed to a legitimate, non-discriminatory reason for her termination (*i.e.*, the reorganization), Plaintiff next bears the burden to prove by a preponderance of the evidence that the stated reason was pretextual. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019). The evidence of Depina's ageist statements is also relevant here. *See Vincent v. Brewer Co.*, 514 F.3d 489, 498 (6th Cir. 2007) ("This court has held that discriminatory remarks may serve as evidence of pretext because they indicate the presence of animus toward a protected group."). And there is more specific evidence that Defendant's stated business-reorganization rationale for Plaintiff's termination was pretextual. Defendant claims that it reorganized the Sales Services Team in order to do away with "the specialized functions that the then members of the Sales Services Team were performing" and instead assign their duties to "multi-task oriented generalist[]" sales administrators. (R. 31, Page ID# 418.) However, Plaintiff has submitted evidence that calls into question whether this was Defendant's real rationale.

---

[1] Plaintiff argues that her position was not eliminated because she was replaced by Rusin. However, it is undisputed that Rusin's position included many duties that Plaintiff never performed, and did not include some duties that Plaintiff had performed. Rusin therefore did not "replace" Plaintiff under this Court's precedent, which requires a closer fit between the duties performed by a plaintiff and the duties performed by a "replacement." *See, e.g.*, *Barnes*, 896 F.2d at 1465.

Specifically, it appears that relatively few of the duties Plaintiff performed were performed by generalist sales administrators after the reorganization; instead, more of her duties were performed by Rusin, who has a specialized managerial role (as Plaintiff did before her termination).[2] We have held that a plaintiff can demonstrate pretext by showing "that the proffered reasons had no basis in fact [or] did not actually motivate the employer's action." *Redlin*, 921 F.3d at 612 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Defendant argues that Plaintiff misinterprets the trade-show arrangement Defendant had after the reorganization; because this is a factual dispute material to the question of pretext, a jury should be the one to decide it.

Based on the evidence that Defendant's business-reorganization may have been pretextual, as well as the evidence of Depina's statements to Plaintiff and the fact that Plaintiff's job duties were taken over by younger employees, we hold that "a reasonable juror could conclude that [the plaintiff] would have kept [her] job if [s]he [was] a different [age], and everything else had remained the same." *Ortiz*, 834 F.3d at 764. It was thus error to grant Defendant summary judgment in this case.

**CONCLUSION**

For the reasons stated above, the judgment of the district court is **REVERSED** and the case is **REMANDED** to the district court with instructions to permit Plaintiff to present her age discrimination claim to a jury.

---

[2] For instance, in 2016, Defendant participated in about 80 trade shows. Rusin participated in at least 25% of these trade shows, including three out of five large trade shows that members of the Sales Services Team attended. By contrast, the sales administrators, Williams, Kolls Warren, and Webb, only attended one of the large trade shows (which Rusin also attended). (R. 31, SUMF, Page ID# 428–29.) Based on Defendant's Statement of Undisputed Material Facts, participating in this one large trade show was the only trade-show experience Kolls Warren and Williams had in 2016. Webb participated in three other trade shows, (R. 31, Page ID# 433), but this pales in comparison to Rusin's twenty trade shows.

**SILER, Circuit Judge, dissenting**. The majority sets out the facts of this case well, so I will not recite them again. I dissent from the conclusion of the majority that Hannon sufficiently presented a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). I agree that the issue is whether plaintiff has met the fourth requirement of the prima facie case. Here, there was no replacement, but there was a reorganization of the office involved. There is no question that Rusin took over some of Hannon's former duties, but Rusin also was designated for other duties that Hannon never performed. Thus, as the majority indicates, Rusin was not a replacement for Hannon. The only evidence to show that there was a discriminatory reason for the termination of Hannon are the remarks made by Depina, calling Hannon "grandma" at team events outside of work hours and once at a meeting, plus calling her a "little old lady" once in a hotel during a trade show. That does not seem to be sufficient evidence to show pretext, especially when the speaker, Depina, was only six years younger than Hannon. Therefore, I would affirm the decision of the district court.