**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0098n.06

Case No. 17-4291

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>BUFFALO WILD WINGS, INC.,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff / Counter-Defendant-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>BW-3 OF AKRON, INC., et al.,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendants / Counterclaimants-Appellants.</td><td>)</td></tr>
</table>

FILED
Mar 01, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: MOORE, CLAY, and DONALD, Circuit Judges.

CLAY, Circuit Judge. Defendant and Counterclaimant BW-3 of Akron, Inc. (BW-3 Akron) and co-counterclaimants Shirley K. Bord, Frederick Bord, Harry L. Bord, and Louise E. Hagstrom (the "Bords"), appeal from the order entered by the district court granting the summary judgment motion of Plaintiff Buffalo Wild Wings, Inc. (BWW) on the counterclaims against it. Specifically, BW-3 Akron appeals the district court's grant of summary judgment against BW-3 Akron's counterclaims for wrongful termination of the Licensing Agreement between BWW and BW-3 Akron, malicious litigation by BWW, and breach of BW-3 Akron's right of first refusal in the Licensing Agreement. For the reasons set forth below, we **AFFIRM** the district court's grant of summary judgment on BW-3 Akron's counterclaims.

## BACKGROUND

## Factual and Procedural History

BWW is the owner of the BWW franchise system and its trademarks. (R. 71-3, BWW Disclosure of Expert Testimony, PageID # 3822.) BWW oversees approximately 1,200 Buffalo Wild Wings restaurants, many run by franchisees who license the right to use BWW marks and methods of doing business. (R. 95-1, Deposition of James Schmidt, PageID # 6581.)

### A. The Licensing Agreement

In 1990, BWW's predecessor entered into a licensing agreement (the "Licensing Agreement") with BW-3 Akron, owned by the Bords, for the right to operate a Buffalo Wild Wings restaurant in Akron, Ohio (the "Akron store"). (R. 8-1, Licensing Agreement, PageID # 200.) The Licensing Agreement authorized BW-3 Akron to use BWW's "Marks"[1] and "System,"[2] recognized that BWW may occasionally change the Marks and System, and provided that BW-3 Akron would be in default if it "should materially fail to operate its stores using the system developed by [BWW] or should fail in any other material way to maintain [BWW's] standard of quality and appearance." (*Id.* at PageID # 203–04.) The Licensing Agreement allowed BWW to immediately terminate the Licensing Agreement if BW-3 Akron was in default under the agreement's terms and did not cure the default within thirty days of receiving notice to cure. (*Id.* at PageID # 204.) The Akron store, before it changed to a different restaurant in response to the underlying lawsuit, was the only BWW restaurant operating under a licensing agreement rather

---

[1] The "Marks" are "the trademarks and servicemarks 'Buffalo Wild Wings and Weck' and 'BW-3' and other proprietary marks, names and copyrights" in which BWW "holds title and interest together with the goodwill connected therewith." (R. 8-1, Licensing Agreement, PageID # 200.)

[2] The "System" is BWW's "distinctive features in products, services, signs, equipment and menu layouts, procedures and formulae for preparing and serving the menu items, specifications for food products, methods of inventory, operational and financial control, and training programs, all of which [BWW] considers proprietary." (*Id.*)

than a franchise agreement. (R. 30, Amended Answer to Amended Complaint and Amended Counterclaim, PageID # 846.)

Paragraph Eleven of the Licensing Agreement provided territorial rights for BW-3 Akron. It granted BW-3 Akron a right of first refusal for the opening of any BWW store in Summit, Medina, Stark, Portage, or Mahoning counties (the "covered territories"). (R. 8-1, Licensing Agreement, PageID # 205.) Under the terms of the Licensing Agreement, BWW could not open or license a BWW store "in the designated counties without the prior written approval of BW-3 Akron without offering the Bords the opportunity to participate as a 50 percent owner in any [BWW] store upon terms not less favorable than those granted to the Bords with respect to BW-3 Akron." (*Id.* at PageID # 205–06.) Since the parties signed the Licensing Agreement, BWW restaurants have opened in four of the five enumerated counties. (R. 16, Defendant's Answer to Amended Complaint and Own Counterclaim, PageID # 774.) Bill Bord[3] complained to his son at various times between 1992 and 1997 that BWW had not honored BW-3 Akron's right of first refusal before opening restaurants in the covered territories. (R. 61, Deposition of Kevin Bord, PageID # 1983–84.)

## B. The Stadia Design

BWW periodically produces new restaurant designs, which it requires its franchisees to implement. (R. 95-3, Exhibit 44, PageID # 6596–6626.) The current design scheme is called the "Stadia" design. (*Id.* at PageID # 6615) In 2003, a dispute arose between the parties over whether a remodel of the Akron store was necessary, culminating in a lawsuit which the parties ultimately settled. (R. 74-1, 2003 Complaint, PageID # 4058.)

---

[3] Bill Bord, the patriarch of the Bord family, was one of the signatories to the Licensing Agreement and the primary BW-3 Akron decisionmaker and liaison between BW-3 Akron and BWW. (R. 60, Deposition of Frederick Bord, PageID # 1918.) He died on January 29, 2014. (BWW Brief, 12.)

In late 2013, the Bords and BWW began discussing a potential buyout by BWW of BW-3 Akron's rights under the Licensing Agreement. (R. 74-3, Exhibit 18, PageID # 4196–97; R. 68, Deposition of Craig Marshall, PageID # 3394.) At a December 2013 meeting discussing the potential buyout, BWW recognized that significant renovations would be necessary to upgrade the building to the Stadia design. (R. 68, Deposition of Craig Marshall, PageID # 3396.) A BWW representative at the December meeting stated that "[o]nce [he] saw the condition of the restaurant that day, it was clear to [him] that it was in dire need of a remodel." (R. 88, Deposition of James Schmidt, PageID # 5372.) Later, BWW told the Bords that if the parties could not agree on a price for the buyout, "there will be no hard feelings on this end and we'll just simply need to shift our discussions to upgrades that need to be made to the Akron facility to bring it up to current standards." (R. 75-1, Internal BWW Email, PageID # 4252–53.)

In June of 2014, the Bords filed an action in Ohio state court alleging that BWW had breached the Licensing Agreement by allowing franchisees to open BWW restaurants within the covered territories without honoring the Bords' right of first refusal. (R. 75-2, 2014 Complaint, PageID # 4259.)[4] In September 2014, BWW sent a letter to BW-3 Akron stating:

> Although BWW thought the parties were still in negotiations for a potential buyout, BW-3 Akron sued BWW in June of 2014. From the allegations in the pleading and based on subsequent discussions between counsel, it appears to BWW that BW-3 Akron intends to not sell its rights in the Agreement, but instead plans to continue operating the BW-3 Akron store. Thus, BWW must now address BW-3 Akron's obligation to upgrade its restaurant to the "Stadia" design standard.

(R. 75-4, Exhibit 24, PageID # 4278.)

---

[4] The state court lawsuit was later voluntarily dismissed after BWW filed the present suit in federal court. (BW-3 Akron Brief, 9.)

Although BW-3 Akron denied that an upgrade was required under the Licensing Agreement, the parties agreed to conduct a "walkthrough of the Akron store to consider the design and layout changes needed to bring the store into 'alignment' with Stadia, recognizing there are physical limitations to the Akron store that will require certain accommodations in that regard." (R. 95-17, Exhibit 58, PageID # 6683.) The parties conducted the "scope walk" of the Akron store on October 13, 2015. (R. 76-5, Exhibit 30, PageID # 4307.)

On March 8, 2016, BWW sent BW-3 Akron the scope walk report and notified BW-3 Akron that it "must provide to BWW within 30 days of BW-3 Akron's receipt of [the] letter, written evidence of its engagement of an architect to design, manage and implement the remodel, consistent with the attached Scope Walk Report." (*Id.*) BW-3 Akron responded that it did not plan to remodel the Akron store. (R. 77-1, Exhibit 31, PageID # 4322.) BWW then sent BW-3 Akron a Notice of Default on April 1, 2016. (R. 77-2, Exhibit 32, PageID # 4323.) The April 1 letter stated that if BW-3 Akron did not take steps to cure the default within thirty days, BWW would terminate the Licensing Agreement. (*Id.* at 4326.)

## C. The Instant Lawsuit

On May 17, 2016, BWW filed a complaint in federal district court against BW-3 Akron, seeking treble damages for violation of the Lanham Act, 15 U.S.C. § 1114, and seeking a declaratory judgment that BWW could terminate the Licensing Agreement as a result of BW-3 Akron's alleged default. (R. 1, Complaint, PageID # 18–21.) On the same day, BWW notified BW-3 Akron that, while BWW believed it had the right to immediately terminate the Licensing Agreement, BWW would hold the termination in abeyance pending a declaratory judgment that termination was proper. (R. 77-3, Exhibit 33, PageID # 4358.)

In June of 2016, the Bords closed the Akron store and re-branded it as a new restaurant, the "Gridiron Grill." (R. 66, Deposition of Christine Bord-Ferris, PageID # 2702.) On July 1, 2016, BWW wrote BW-3 Akron and the Bords to notify them that BWW considered the re-branding to constitute a separate default under the Licensing Agreement and that the Licensing Agreement would terminate if the Bords did not cure the default by re-opening the Akron store as a BWW restaurant within thirty days. (R 78-2, Exhibit 37, PageID # 4404.)

In BW-3 Akron's answer to BWW's complaint, BW-3 raised several counterclaims. (R. 30, Amended Answer to Amended Complaint and Amended Counterclaim, PageID # 845–52.) BW-3 Akron sought damages against BWW for breach of the Licensing Agreement by failing to honor BW-3 Akron's right of first refusal in the covered territories; wrongful termination of the Licensing Agreement; and unfair competition through malicious litigation. (*Id.*)

The parties filed cross-motions for summary judgment on each other's claims. (R. 59, BWW Motion for Summary Judgment, PageID # 1908; R. 58, BW-3 Akron Motion for Summary Judgment, PageID # 1841.) On November 14, 2017, the district court granted BWW's motion for summary judgment on BW-3 Akron's counterclaims and denied BW-3 Akron's motion for summary judgment on BWW's claims. (R. 113, Memorandum Opinion and Order, PageID # 7362.) BWW voluntarily dismissed its claims against BW-3 Akron on November 21, 2017. (R. 126, Stipulated Notice of Dismissal, PageID # 7810.) BW-3 Akron filed its appeal of the district court's judgment on December 14, 2017. (R. 127, Notice of Appeal, PageID # 7813.) Only BW-3 Akron's counterclaims for wrongful termination, malicious litigation, and breach of the right of first refusal are at issue in this appeal.

## DISCUSSION

## Standard of Review

We review *de novo* a district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that there is no such genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a fact is "material" depends on whether its resolution might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a summary judgment motion, this Court must "consider the evidence in the light most favorable to the non-moving parties, drawing all justifiable inferences in their favor." *Payne v. Novartis Pharmaceuticals Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 251–52).

## I.      Wrongful Termination
### Analysis

BW-3 Akron argues that the district court erred in granting summary judgment for BWW on BW-3 Akron's wrongful termination counterclaim. BW-3 Akron focuses on two points in its argument: first, it argues that BWW wrongfully terminated the Licensing Agreement by declaring BW-3 Akron in default, sending the termination letter to BW-3 Akron, and filing the present action seeking a declaratory judgment and Lanham Act damages; and second, it argues that BW-3 Akron did not voluntarily abandon the Licensing Agreement.

It is undisputed that in BWW's May 17, 2016 letter to BW-3 Akron and the Bords, BWW stayed actual termination of the Licensing Agreement pending resolution of the present action. (R. 77-3, Exhibit 33, PageID # 4358.) Thus, BWW did not actually terminate the Licensing Agreement. BW-3 Akron argues extensively in its brief that BWW's demand that BW-3 Akron remodel the Akron store was improper, because, based on BW-3 Akron's interpretation of the Licensing Agreement, BW-3 Akron was not required to remodel the Akron store. (BW-3 Br. at 19–24.) However, whether or not BWW *had the right* to terminate the Licensing Agreement based on BW-3 Akron's alleged breach is not the same question as whether BWW *actually* terminated the Licensing Agreement.

BW-3 Akron argues that BWW "constructively terminate[d]" the Licensing Agreement by "wrongfully declaring default, issuing the Notice of Termination[,] and filing this Lanham Act lawsuit." (BW-3 Akron Br. at 24.) BW-3 Akron cites several cases from various states and circuits to support this argument, but those cases are not helpful. The cases suggest that a party has a claim for constructive termination when its opponent seeks to take actions that would essentially destroy the viability of the contract. *See, e.g., Maintainco, Inc. v. Mitsubishi Caterpillar Amer., Inc.*, 975 A.2d 510, 518 (N.J. Super. Ct. App. Div. 2009); *Tilstra v. Bou-Matic, LLC*, 1 F.Supp. 3d 900, 913 (W.D. Wis. 2014). In this case, BWW took no such action. Rather, it filed a lawsuit alleging that BW-3 Akron violated the Licensing Agreement. BW-3 Akron cites no case law supporting the proposition that a party constructively terminates an agreement when it brings legal action seeking to enforce what it believes are its rights under a contract. Regardless of whether BWW or BW-3 Akron would have prevailed on the declaratory judgment and Lanham Act claims, BWW did not constructively terminate the Licensing Agreement by filing the present action. Instead, as the

district court correctly pointed out, BW-3 Akron voluntarily abandoned the Licensing Agreement when it rebranded the Akron store as the Gridiron Grill.

BW-3 Akron argues that the district court erred in granting summary judgment based on BW-3 Akron's voluntary abandonment, because "[a]bandonment is a question of fact for the trier of fact." *Mooney v. Green*, 446 N.E.2d 1135, 1139 (Ohio Ct. App. 1982). "[A]bandonment is a matter of intention and requires an intentional relinquishment of contractual rights, which may be implied from the conduct of the parties." *Id.* "While it is true that the law in Ohio states that intent is primarily a jury question, it seems absurd to conclude that a claim, unsupported by even a scintilla of evidence, must always go to the jury." *Brulport v. Coopervision, Inc.*, 979 F.2d 850 (6th Cir. Nov. 10, 1992) (table). Further, this would be incompatible with the evidentiary standards applicable to summary judgment. *See Payne*, 767 F.3d at 530.

In this case, BW-3 Akron argues that it never voluntarily abandoned the Licensing Agreement. However, BW-3 Akron has not submitted any evidence to support its position that it did not intend to abandon the Agreement. BW-3 Akron undertook a costly re-branding of the Akron store to reopen under the name "Gridiron Grill." Removing all BWW marks from the Akron store and reopening under a different name strongly implies an intent to abandon the Licensing Agreement. BW-3 Akron has not put forward any evidence suggesting that it maintained a subjective intent to continue operating as a BWW store after investing in a costly re-branding. The undisputed evidence establishes that BW3-Akron abandoned the Licensing Agreement by closing the Akron store, removing all BWW marks, and reopening as the Gridiron Grill. On the other hand, there is no evidence that BWW wrongfully terminated—rather than attempted to enforce its rights under—the Licensing Agreement. Therefore, the district court did not err by granting summary judgment in favor of BWW on BW-3 Akron's wrongful termination counterclaim.

## II.    Malicious Litigation

### Analysis

BW-3 Akron argues that the district court erred in granting summary judgment in favor of BWW on BW-3 Akron's malicious litigation counterclaim. In order to succeed on its malicious litigation counterclaim, BW-3 Akron had to establish that BWW's lawsuit was "objectively baseless" and that BWW "had the subjective intent to injure [BW-3 Akron's] ability to be competitive." *Am. Chem. Soc'y v. Leadscope, Inc.*, 978 N.E.2d 832, 839 (Ohio 2012). A lawsuit is "objectively baseless" when "no reasonable litigant could realistically expect success on the merits." *Id.* at 840 (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993)). A chance of success, "even if small," indicates that a claim was not objectively baseless. *NLRB v. Allied Mech. Servs.*, 734 F.3d 486, 493 (6th Cir. 2013). If, viewing the evidence in the light most favorable to BW-3 Akron, BWW's lawsuit was not objectively baseless, then summary judgment was appropriate on this counterclaim.

### A.  Declaratory Judgment

BW-3 Akron argues in its reply brief that BWW's declaratory judgment claim was objectively baseless. (BW-3 Akron Reply Br. at 6–10.) The question, then, is not what the Licensing Agreement actually requires, but whether BWW had any reasonable basis to bring the declaratory judgment claim. If BWW had even a small chance of success on its declaratory judgment claim, then it did not engage in malicious litigation by bringing its declaratory judgment claim. *See Allied Mech. Servs.*, 34 F.3d at 493. As explained in BW-3 Akron's brief, BWW's standard franchise agreement requires franchisees to periodically remodel their restaurants and to make changes to the "exterior and interior layout, design[,] and color scheme." (BW-3 Akron Br. at 20–21.) The Licensing Agreement, in contrast, does not contain such explicit language

mandating periodic remodels. Instead, it describes the BWW "system," comprising "distinctive features in products, services, signs, equipment and menu layouts," *inter alia*. (R. 8-1, Licensing Agreement, PageID # 200.) The Licensing Agreement provides that BW-3 Akron would be in default if it "should materially fail to operate its stores using the system developed by [BWW] or should fail in any other material way to maintain [BWW's] standard of quality and appearance in the operation of a [BWW] store." (*Id.* at PageID # 204.) BWW and BW-3 Akron had clashed before over whether this provision required remodeling in connection with a similar dispute arising in 2003. (R. 74-1, 2003 Complaint, PageID # 4058.) Ultimately, what matters is whether the Licensing Agreement is remotely susceptible to BWW's interpretation. We find that it is. The Licensing Agreement contains undefined terms about what the "system" comprises, which could reasonably be interpreted to include store layout.[5] Therefore, BWW's declaratory judgment claim to finally determine the obligations of the parties under the Licensing Agreement was not objectively baseless.

### B. Lanham Act

BW-3 Akron also argues that BWW engaged in malicious litigation through its Lanham Act claim. Again, the question is not which party would actually prevail on the Lanham Act claim, but whether BWW had any reasonable basis to bring such a claim. If BWW had even a small chance of success on the Lanham Act claim, then it did not constitute malicious litigation for BWW to bring that claim. *See Allied Mech. Servs.*, 34 F.3d at 493.

The Lanham Act, 15 U.S.C. § 1114, protects trademark registrants against the unauthorized use of their trademarks. It is intended to prevent consumer confusion about the origin or

---

[5] In fact, while not dispositive, the district court offered its opinion that BWW had a high likelihood of success on its declaratory judgment claim. (R. 113, Memorandum Opinion and Order, PageID # 7366–67.)

sponsorship of products. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). BW-3 Akron argues that the Lanham Act claim was objectively baseless because "BW-3 Akron's use of the marks certainly was not likely to cause any confusion in the marketplace as to BWW's origin or sponsorship of the product since it was undisputed that BW-3 Akron was purchasing and serving authentic BWW trademark product." (BW-3 Akron Br. at 30.) BW-3 Akron further argues that it could not have violated the Lanham Act because BW-3 Akron was licensed to serve BWW products and use BWW trademarks under the Licensing Agreement. (BW-3 Akron Br. at 32.) BWW's Lanham Act claim asserted that BW-3 Akron's use of BWW's marks in the Akron store was unauthorized because the Akron store did not comply with BWW's "standard of quality and appearance in the operation of a [BWW] store," as required by the Licensing Agreement. (R. 8-1, Licensing Agreement, PageID # 204.) BWW argued that allowing BW-3 Akron to continue using its marks in the manner it did would tarnish the goodwill associated with BWW's marks by leading customers to believe that BWW offered a sub-par dining experience. (BWW Br. at 48.)

BW-3 Akron argues that a current licensee does not violate the Lanham Act by using a mark within the scope of its license. *See McCoy v. Mitsubishi Cutlery, Inc.*, 67 F.3d 917, 920 (6th Cir. 1995). However, whether BW-3 Akron used the mark within the scope of the Licensing Agreement is precisely the question that was at issue under the Lanham Act claim: BWW argued that BW-3 Akron's use of its marks *exceeded* the scope authorized in the Licensing Agreement. Several circuits have held that a viable Lanham Act claim can exist even while a valid license agreement is in effect. *See, e.g., Franchised Stores of N.Y., Inc. v. Winter*, 394 F.2d 664, 668–69 (2d Cir. 1968) (Lanham Act claim could proceed when licensee used trademark to sell a combination of authorized and unauthorized goods, because a "trademark licensor may succeed in

a trademark infringement action against one who is still his licensee"); *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1180 (11th Cir. 1994) (viable Lanham Act claim existed where the licensee sold some unauthorized product from the licensor, even though the unauthorized product was identical to the authorized product, because "identical goods sold in an unauthorized manner are not necessarily genuine for purposes of the Lanham Act"); *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 470 (8th Cir. 2011) (use of mark exceeded authorized scope when licensee used the mark to promote unrelated programs); *see also Dig. Equip. Corp. v. AltaVista Tech.*, 960 F. Supp. 456, 459 (D. Mass. 1997) (licensee used mark in ways not authorized by the licensing agreement). BWW has presented evidence not only that it believed BW-3 Akron was operating in violation of its obligations under the Licensing Agreement, but also that BWW employees and even BWW customers found the Akron store to be sub-par as compared to other BWW stores. (R. 95-4, Exhibit 45, PageID # 6632; R. 95-15, Exhibit 56, PageID # 6678.) BWW had at least a colorable argument that, by refusing to update the Akron restaurant in order to provide a customer experience consistent with the BWW brand, BW-3 Akron used BWW's marks in a way not authorized under the Licensing Agreement. Accordingly, BWW's Lanham Act claim was not objectively baseless and the district court did not err by granting summary judgment in favor of BWW on this claim.

## III.    Right of First Refusal

### Analysis

Lastly, BW-3 Akron argues that BWW breached the Licensing Agreement by failing to honor BW-3 Akron's right of first refusal before opening BWW restaurants in the covered territories. To establish a claim for breach of contract under Ohio law, BW-3 Akron must prove that a contract existed, that BW-3 Akron performed under the contract, that BWW breached the

contract, and that BW-3 Akron suffered damages as a result of the breach. *See Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994) (citing 2 Ohio Jury Instructions (1993), Section 253.01, at 111-12). BW-3 Akron does not appeal the district court's determination that the statute of limitations barred BW-3 Akron's claim for breach of the right of first refusal as to all but two BWW stores in the covered territories. *See* Ohio Rev. Code Ann. § 2305.06. Those two stores within the limitations period are one that opened in 2000 in Austintown, OH and one that opened in 2004 in Streetsboro, OH.

### A. Evidence Supporting BW-3 Akron's Claim of Breach

BW-3 Akron argues that it had "no obligation to present evidence on this issue because BWW failed to identify any evidence to affirmatively show it obtained BW-3's written approval to open any of the restaurants, nor any evidence to affirmatively show BWW ever actually offered the Bords a right of first refusal to be a 50% owner of any of the restaurants." (BW-3 Akron Br. at 37.) BW-3 Akron misstates the parties' burdens at the summary judgment stage. Breach of the Licensing Agreement by BWW is an essential element of BW-3 Akron's claim. *Doner*, 649 N.E.2d at 44. Therefore, BWW is entitled to summary judgment if BW-3 Akron cannot put forward any evidence supporting a finding that BWW breached the right of first refusal. As the Supreme Court explained in *Celotex Corp.*, 477 U.S. at 322–24, a party seeking summary judgment does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim." Rather, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Therefore, if BW-3 Akron has not put forward any

evidence supporting its claim that BWW breached the right of first refusal in the Licensing Agreement, then BWW is entitled to summary judgment on that claim.

In support of its argument, BW-3 Akron primarily relies on Kevin Bord's testimony that Bill Bord complained to him that BWW had opened restaurants in the covered territory without first allowing BW-3 Akron to exercise its right of first refusal. (BW-3 Akron Br. at 37–38; BW-3 Akron Reply Br. at 12.) However, the district court correctly ruled Kevin Bord's testimony regarding statements allegedly made by his late father was inadmissible hearsay, *see* Fed. R. Evid. 801, and "evidence submitted in opposition to a motion for summary judgment must be admissible." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). Even if it were admissible, the father's complaints made sometime between 1992 and 1997 predated the opening of the Austintown and Streetsboro stores in 2000 and 2004, respectively. Kevin Bord's testimony could not establish that BWW did not honor the right of first refusal for those stores. (R. 61, Deposition of Kevin Bord, PageID # 1983–84.)[6]

The district court did not err in finding that BW-3 Akron failed to establish any facts supporting an essential element of its claim and in granting summary judgment in favor of BWW.

## B. Additional Arguments

Because we find that BW-3 Akron failed to offer evidence that BWW breached the right of first refusal, we need not address the additional arguments raised by BWW in support of the district court's grant of summary judgment on this issue.

---

[6] In its reply brief, BW-3 Akron for the first time points to additional evidence supporting its claim that BWW did not honor the right of first refusal in the Licensing Agreement. (BW-3 Akron Reply Br. at 13.) However, "[a]rguments raised for the first time in a reply brief are precluded on appeal." *Anton v. Nat'l Union Fire Ins. Co.*, 634 F.3d 364, 368 n.2 (6th Cir. 2011).

**CONCLUSION**

Because BW-3 Akron has failed to present evidence sufficient to demonstrate a genuine dispute of material fact on any of its counterclaims, we **AFFIRM** the district court's grant of summary judgment on each of BW-3 Akron's counterclaims.